Mills v. Cleveland.

----

H. L. MILLS et al., *Appellees,* v. O. B. CLEVELAND et al. (C. E. RESSLER, *Appellant*).

No. 17,540.

H. L. MILLS et al., *Appellees,* v. O. B. CLEVELAND et al. (O. B. CLEVELAND, *Appellant*).

No. 17,541.

SYLLABUS BY THE COURT.

1. CONTRACTS—*In Restraint of Trade—Public Policy.* While contracts in general restraint of trade or business are void, contracts less restrictive are invalid only when inimical to the public welfare, and they are to be judged, not by the arbitrary measure of extent in time or extent in space, but by their reasonableness under all the circumstances, having regard both for the liberty of a person to make beneficial use of his own and the public consequences of such use.

2. ——— *Sale of Physician's Specialties, Formulas and Good Will.* The contract involved in this case, limiting the right of a physician to practice a specialty and limiting his right to sell or disclose certain formulas used in such practice, is held to be valid.

3. ——— *Injunction—Good Will and Influence.* A physician

who is a member of a firm practicing a specialty and making use of certain remedies and formulas in such practice, may on retiring sell his influence and good will to the firm or its successors, and having done so he and anyone in collusion with him may be enjoined from doing any act which prevents the vendees from enjoying the benefits of such influence and good will to the same extent as they were enjoyed before the sale.

Appeal from Harper district court. Opinion filed July 6, 1912. Affirmed.

*T. A. Noftzger,* of Anthony, *Andrew G. Washbon,* of Harper, and *George Gardiner,* of Wichita, for the appellants.

*George E. McMahon,* and *R. P. McColloch,* both of Anthony, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The defendants, Cleveland and Ressler, appeal from a judgment enjoining them from conduct destructive of the benefits and advantages flowing from a contract entered into between Cleveland and the plaintiffs, Mills & Thompson.

O. B. Cleveland was a practicing physician at Anthony, Kan., and a specialist in the treatment of particular diseases. In his specialty he employed remedies prepared and used according to formulas of his own. In 1908 Dr. H. L. Mills purchased an interest in the business for the sum of $5000. The Cleveland remedy and treatment were uniformly effective, and through judicious advertising the business prospered and became very valuable. On January 1, 1910, Dr. Cleveland sold his interest in the business and in the formulas and his influence and good will to Thompson and Thompson, who associated themselves with Dr. Mills under the firm name of Mills & Thompson. The contract follows:

*"Know all Men by these Presents:* That for and in consideration of the sum of five thousand dollars

($5,000.00) to me in hand paid, the receipt of which is hereby acknowledged, I have, this 1st day of January, 1910, sold and delivered to Mrs. Allie Thompson and H. E. Thompson an undivided one-half interest in my business and specialty of proctology, together with each and every formula by me used in the practice of said specialty, Mrs. Allie Thompson acquiring by this sale an undivided one-fourth interest in said business and H. E. Thompson acquiring an undivided one-fourth interest in the same.

"I hereby promise and agree that I will not practice or attempt to practice proctology at any time hereafter in any part of the United States of America, unless expressly authorized by the said Allie Thompson, H. E. Thompson or the firm of Thompson & Mills, consisting of Dr. H. L. Mills, the said Allie Thompson and the said H. E. Thompson. And in addition to the delivery of said business and of said formulas to said Allie Thompson and H. E. Thompson and the agreement not to practice or attempt to practice proctology as aforesaid, I further promise and agree that I will, whenever an occasion arises, give to said parties and to the firm of Mills & Thompson the benefit of my good will and influence for the promotion of the interests of said parties and of said firm in the practice of said business and specialty of proctology.

"It is understood and agreed that the said O. B. Cleveland reserves the right to sell at any time and only to persons residing in good faith beyond a radius of 500 miles around the city of Anthony, Kansas, any or all of the formulas used by him or by said Dr. Mills in the practice of proctology, and that the net proceeds of all such sales shall immediately upon the collection of the same be equally divided between the said O. B. Cleveland and the firm of Mills & Thompson, or their legal successors in said business.

"It is also understood and agreed that the said firm of Mills & Thompson, or their successors in the said business, shall have the right to sell at any time any or all of the formulas used by Dr. Mills in the practice of said business, without any restriction as to residence of purchaser, but, with the understanding and agreement that the net proceeds of the sale of any such formula or formulas shall, immediately upon the collection of the same, be equally divided between said

firm and the said O. B. Cleveland, one-half to the former and one-half to the latter.

"*It is also agreed* that the firm of Mills & Thompson may use the name of Dr. O. B. Cleveland for advertising purposes only, and that in all cases which the said O. B. Cleveland shall attend or take charge of personally at the request and in the employment of said firm said O. B. Cleveland shall assume equal responsibility, and for his personal services and the assumption of such responsibility shall receive as compensation one-half of the net fees in each and every such case.

"*The said O. B. Cleveland promises and agrees* that he will at no time and to no person reveal, intimate or suggest the whole or part of the ingredients of any of the formulas used by him or by said firm or any of the members thereof in the practice of said specialty of proctology, excepting only to such persons as may purchase and pay for the same when sold by the said O. B. Cleveland in accordance with the provisions of this agreement.

"*The said O. B. Cleveland promises and agrees* that if he shall at any time violate any of the provisions of this agreement, either by practicing proctology or by selling or disclosing said formulas, or any of them, except as hereinbefore provided, he will forfeit and pay to said firm of Mills & Thompson the sum of three thousand dollars as and for liquidated damages for the breach of this agreement.

"*It is further understood* that the said Dr. H. L. Mills had formerly acquired by purchase from the said O. B. Cleveland an undivided one-half interest in said business and in said formulas, and that the said Dr. H. L. Mills is the legal owner of an undivided one-half interest in said business and of said formulas.

"*Dr. Mills hereby promises and agrees* that, except in cases of *bona fide* sales made for reasonable consideration, he will never reveal, intimate or suggest any or all of the ingredients in said formulas, or any of them, to any person or persons whomsoever; and that if he shall at any time violate this agreement he will forfeit and pay to Dr. O. B. Cleveland, Allie Thompson and H. E. Thompson the sum of three thousand dollars ($3,000.00) as liquidated damages for such breach of agreement, to be divided equally among said parties.

"*The said H. E. Thompson hereby promises and*

Mills v. Cleveland.

*agrees* that he will never at any time, except in case of *bona fide* sales for reasonable consideration, reveal, intimate or suggest to any person or persons any or all of the ingredients of said formulas, or any of them, and that in case of any violation of this agreement he will at once forfeit and pay to the said Dr. H. L. Mills, Allie Thompson and Dr. O. B. Cleveland the sum of three thousand dollars as and for liquidated damages for such breach of agreement, such sum to be equally divided among said parties when so paid.

"*The said Allie Thompson hereby promises and agrees* that she will at no time reveal, intimate or suggest to any person or persons whomsoever, unless in case of *bona fide* sale for a reasonable consideration, any or all of the ingredients in said formulas, or any of them, and that in case of any breach of this agreement on her part she will at once forfeit and pay to the said Dr. Mills, Dr. Cleveland and H. E. Thompson the sum of three thousand dollars as and for liquidated damages for breach of this agreement, such sum to be equally divided among said parties.

"While this agreement contemplates a continuance of the practice of proctology as formerly carried on by Dr. O. B. Cleveland and by his former partner, Dr. H. L. Mills, it is distinctly understood that it does not contemplate the practice of proctology or of medicine or surgery in any form by the said H. E. Thompson or Allie Thompson, and that their relation to the said business and to the sanitarium to be maintained in connection with the practice of the same is to be in all respects in conformity with the laws governing the practice of medicine and surgery in Kansas and in other states, and that the practice of such specialty is to be carried on by the said Dr. Mills and by such other legally qualified persons as said firm may from time to time employ or associate with them for that purpose."

The proof amply warranted a finding that Dr. Cleveland and Dr. Ressler were in collusion to deprive the plaintiffs of the benefits of their contract by promoting a rival business conducted by Dr. Ressler, with whom Dr. Cleveland maintains offices ostensibly for the treatment of chronic diseases not included in the

specialty. There was proof that Dr. Cleveland desired to dispose of his business, formulas, influence and good will, because of his purpose to retire from the practice of his specialty, and that this purpose was induced by advanced age, increasing physical infirmities, and his comfortable financial condition.

This court has taken the view that contracts in general restraint of that natural rivalry which ordinarily exists in trade and other business pursuits are inimical to the public welfare, and that the decisive test of the validity of less restrictive contracts is the resulting injury to the public. (*Keene v. Gas Co.*, 69 Kan. 284, 76 Pac. 834.) The opinion in this case refers to none but the more conservative decisions, but it accords with the modern doctrine, born of modern social and business conditions, that the validity of a contract in partial restraint of trade or business is not to be determined by the arbitrary measures of extent in time, extent in space, and the like, but by its reasonableness under all the circumstances, having regard both for the liberty of a person to make beneficial use of his own, and for the public consequences of such use. Considered in this manner the contract in question is valid. The formulas which were the foundation of the specialty were essentially secret. Perhaps others than Dr. Cleveland and Dr. Mills had some knowledge of them. Perhaps Dr. Ressler, from previous association with Dr. Cleveland, knew the ingredients of the remedies, but no common or general competency to administer them existed. Therefore the subject of the contract belongs to a different class from those which involve competition between public service corporations like gas and electric light companies, or which involve natural competition in ordinary branches of trade. The law would be very unjust if it refused to permit one in Dr. Cleveland's situation, who desired to retire from the arduous practice of one branch of his profession, to do so upon advantageous terms by guar-

anteeing the genuineness of his retirement. Under even the narrower rules the sale of the formulas was not unreasonably restricted. A retiring partner may sell his influence and good will to the firm or its successor. This is true of professional men and firms. (20 Cyc. 1277.) In this case the good will of the business was one of its most important assets, and good faith required that Dr. Cleveland do nothing which would deprive Mills & Thompson of its benefits and advantages.

"By the sale of the 'good will,' he could not use the old name, and relinquished any benefit or advantage which might result from its previously established character; nor could he do any other act that would prevent his vendee from enjoying that good will, as well against himself as others, to the same extent and in the same way that the defendant had himself a previous right to the unmolested enjoyment of them." (*Drake v. Dodsworth*, 4 Kan. 159, 172.)

The contract is not in violation of any statue of this state. The right to an injunction is not affected by the provisions of the contract relating to the amount of damages recoverable for its breach. The injunction properly runs against Dr. Ressler.

The judgment of the district court is affirmed.